UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JAYQUAN ROBINSON,

      Petitioner,                      Case No. 15-14050
                                                  Hon. Matthew F. Leitman

v.

SHANE JACKSON,

      Respondent.
_____/

**OPINION AND ORDER (1) DENYING PETITION FOR WRIT OF HABEAS CORPUS (ECF #1), (2) DENYING A CERTIFICATE OF APPEALABILITY, AND (3) DENYING LEAVE TO APPEAL *IN FORMA PAUPERIS***

      Petitioner Jayquan Robinson ("Robinson") is a state prisoner in the custody of the Michigan Department of Corrections. On July 25, 2013, Robinson pleaded no contest in the Oakland County Circuit Court to one count of assault with intent to commit murder, MICH. COMP. LAWS § 750.83, two counts of armed robbery, MICH. COMP. LAWS § 750.529, and three counts of possession of a firearm during the commission of a felony, MICH. COMP. LAWS § 750.227b. The state trial court sentenced Robinson to concurrent terms of 330 to 720 months for the assault and armed robbery conviction and a consecutive term of 2 years for the firearm convictions.

1

On November 12, 2015, Robinson filed a petition for a writ of habeas corpus in this Court pursuant to 28 U.S.C. § 2254 (the "Petition"). (*See* ECF #1.)[1] The Petition raises three claims: 1) Robinson's no contest plea was the product of ineffective assistance of counsel, 2) the state trial court incorrectly scored Robinson's sentencing guidelines to reflect a prior felony conviction that was actually a juvenile misdemeanor, and 3) Robinson's trial counsel was ineffective for failing to object to the scoring of the guidelines. The Court concludes that Robinson is not entitled to habeas relief. Accordingly, for the reasons stated below, the Petition is **DENIED**. The Court also **DENIES** Robinson a certificate of appealability and permission to appeal *in forma pauperis*.

I

The charges against Robinson arose after he and another man, Artrus Pickens ("Pickens"), robbed and shot a man named Damaris Ellsworth ("Ellsworth"). Ellsworth testified at the preliminary examination that on the evening of March 30, 2011, he was at his girlfriend's residence in Pontiac, Michigan. (*See* ECF #14-2 at 5, Pg. ID 157.) Ellsworth said that Robinson and Pickens came to his girlfriend's house, ostensibly to purchase marijuana. (*See id.* at 9-11, Pg. ID 161-63.) Ellsworth knew Robinson because Robinson had previously

---

[1] Robinson filed a second petition on November 23, 2015. (*See* ECF #9.) Both petitions raise the same grounds for relief. (*See* ECF ## 1, 9.) On January 7, 2016, the Court entered an Order consolidating the two petitions into a single action. (*See* ECF #7.)

purchased marijuana from him. (*See id.* at 9-10, Pg. ID 161-62.) Ellsworth testified that after Robinson entered the house, Robinson pulled out a revolver and Pickens pulled out an assault rifle. (*See id.* at 12, Pg. ID 164.) Robinson thereafter pointed his gun at the back of Ellsworth's head and demanded Ellsworth's money. (*See id.* at 12-13, Pg. ID 164-65.) Robinson then rifled through Ellsworth's pockets and took Ellsworth's cellphone. (*See id.* at 14, 17, Pg. ID 166, 169.) Robinson and Pickens then left the house, and Ellsworth closed the door behind him. (*See id.* at 14, Pg. ID 165.) Ellsworth testified that Robinson then shot towards the closed door three or four times, striking Ellsworth in the chest. (*See id.* at 14-15, Pg. ID 166-67.). The bullet penetrated Ellsworth's diaphragm, went through a kidney, and it lodged in his liver. (*See id.* at 15, Pg. ID 167.)

Based on this evidence, the state district court judge bound Robinson over to the circuit court for trial on fourteen charges: 1) one count of assault with intent to commit murder, 2) six counts of armed robbery, and 3) seven counts of commission of a felony with a firearm. (*See id.* at 25-26, Pg. ID 177-78; ECF #14-15 at 19, Pg. ID 241.)

On July 25, 2013, Robinson appeared in the Oakland County Circuit Court for a pre-trial hearing. At that hearing, Robinson's counsel indicated that she met with Robinson and that he informed her that he wanted to enter into a plea agreement to resolve the charges against him. (*See* ECF #14-3 at 2, Pg. ID 181.)

The prosecutor told the state court that the plea deal called for Robinson to plead no contest to the first six counts brought against him – one count of assault with intent to murder, two counts of armed robbery, and three counts of commission of a felony with a firearm. (*See id.*)  In exchange, the prosecutor agreed to dismiss the remaining eight counts. (*See id.*)  The trial court then stated on the record that it had previously met with the attorneys in chambers and had made a *Cobbs* evaluation that Robinson would be sentenced to the lower third of the sentencing guidelines. (*See id.*)[2] Robinson told the trial court that he understood the terms of the plea agreement and that he recognized that he would be required to serve a two-year sentence for the firearm convictions before his other sentences. (*See id.*)

Robinson was then placed under oath. (*See id.* at 3, Pg. ID 182.)  Robinson told the state court that he was twenty years old, that he could read, write, and understand the English language, and that he understood the court and his attorney. (*See id.*)  The trial court then asked Robinson specifically if he understood that he was pleading to, among other charges, "one count of assault with intent to murder."[3]  (*Id.*)  Robinson responded affirmatively. (*See id.*)  The court then

---

[2] See *People v. Cobbs*, 505 N.W.2d 208, 212 (Mich. 1993) (creating procedure whereby a sentencing evaluation is made in conjunction with a plea agreement that allows a defendant to withdraw a plea in the event the trial court is unable to sentence the defendant in accordance with the evaluation).

[3] At the beginning of the plea colloquy, the trial judge appears to have mistakenly asked Robinson if he intended to "plead[] guilty" instead of pleading no contest.

4

informed Robinson that the maximum possible penalty was life imprisonment and the minimum possible sentence was fifteen years imprisonment. (*See id.*) Robinson further told the court that he understood that the court had agreed to sentence Robinson to the lower third of his sentencing guidelines. (*See id.*) Robinson then stated he had no questions about the plea agreement and that he understood the agreement. (*See id.*)

The Court next informed Robinson of all the trial rights that he would be waiving by entering his plea, and Robinson said that he understood those rights. (*See id.* at 3-4, Pg. ID 182-83.)  Robinson also told the court that he understood that by entering his plea he was giving up any claim that his plea was the result of promises or threats that were not disclosed to the court. (*See id.*) Robinson then denied that anyone had threatened him in any manner to obtain the plea. (*See id.*)

The prosecutor used the transcript of the preliminary examination to establish a factual basis for the plea. (*See id.* at 4-5, Pg. ID 183-84.) He stated on the record that "the preliminary examination transcript in this matter and/or the incident report from the Pontiac Police Department would establish" that, among other things, Robinson "did commit assault with intent to murder by shooting [Ellsworth]." (*Id.*)  Robinson acknowledged that he was present at the preliminary examination, heard the testimony of the one witness who testified, and had the

---

(*See* ECF #14-3 at 3, Pg. ID 182.)  But the judge later confirmed with Robinson that it was Robinson's choice to plead no contest. (*See id.* at 4, Pg. ID 183.)

opportunity to assist his counsel at that proceeding. (*See id*. at 5, Pg. ID 184.) At no time did Robinson object to either the charge of "assault with intent to murder" or the prosecutor's assertion that the preliminary examination could establish that he committed that crime. At the conclusion of the hearing, the court found that Robinson's plea was entered freely, voluntarily, accurately, and knowingly. (*See id.*)

The court held Robinson's sentencing hearing on August 14, 2013. (*See* ECF #14-4.) At that hearing, defense counsel indicated that Robinson's sentencing guidelines were calculated higher than she anticipated. (*See* ECF #14-4 at 2, Pg. ID 187.) She then asked for the court to sentence Robinson at the bottom of the guideline range. (*See id.*) She told the court that Robinson was only 17-years-old when he committed the crime, that he could not read, and that he was unable to secure employment. (*See id.* at 2-3, Pg. ID 187-88.)

Robinson then addressed the court. (*See id.* at 3, Pg. ID 18.) He said that he was sorry for harming the victim, that he wanted a second chance, and that he did not want to spend the rest of his life in prison because he had a son. (*See id.*) Robinson acknowledged "committ[ing] a crime" and told the court that what he did "was wrong." (*Id.*)

After Robinson spoke, the court informed the parties that it would comply with the *Cobbs* evaluation and sentence Robinson to the bottom third of the

6

sentencing guidelines. (*See id.* at 4, Pg. ID 189.) The sentencing guidelines were scored to call for a minimum sentence between 270 and 450 months. (*See* ECF #14-9 at 3, Pg. ID 204.) The court ultimately sentenced Robinson to 330 to 720 months for the assault and robbery convictions, and a consecutive two years for the firearm convictions. (*See* ECF #14-4 at 4, Pg. ID 189.)

On February 5, 2014, Robinson's appellate counsel filed a motion in the state trial court to vacate Robinson's sentence on the ground that the sentencing guidelines were scored incorrectly. (*See* ECF #14-6.) Appellate counsel asserted that Robinson was erroneously scored points for being on probation for a felony conviciton when in fact he was on probation for a juvenile misdemeanor conviction. (*See id.*) Appellate counsel insisted that the corrected guidelines would have called for a minimum sentence between 225 and 375 months. (*See id.*)

Robinson's appellate counsel also filed a motion to withdraw Robinson's plea. (*See* ECF #14-7.) In that motion, appellate counsel asserted that Robinson's plea was involuntary because his trial counsel failed to properly investigate the case, failed to interview witnesses, failed to investigate possible defenses, and provided inaccurate advice. (*See id.*) The motion further alleged that Robinson was not informed of the elements of the offense of assault with intent to commit murder, and if he had been adequately informed of those elements, he would not have pleaded no contest. (*See id.*)

7

In support of his motion to withdraw his plea, Robinson executed an affidavit on February 13, 2014. (*See* ECF #14-5.) In the affidavit, Robinson maintained that his trial attorney did not investigate any witnesses or review the evidence. (*See id.* at ¶3.) He also said that his trial counsel failed to visit him, file motions, obtain a psychiatric evaluation, or contact any of his family members. (*See id.*) Robinson also insisted that he informed his trial counsel that he did could not read, had a low IQ, and did not understand the charges brought against him. (*See id.* at ¶4.) He alleged that his trial counsel informed him that if he did not accept the plea deal he would receive life imprisonment if he lost at trial. (*See id.* at ¶5.) Robinson stated that he felt coerced into taking the plea. (*See id.* at ¶6.) He also said that he told his trial counsel that the victim pulled a knife on him and chased him as he was running away. (*See id.* at ¶7.) He indicated that his trial attorney never advised him that the crime of assault with intent to murder required an intent to kill, and that if he had known that he would not have entered a plea to that charge. (*See id.* at ¶8.)

The trial court held a hearing on these motions on April 2, 2014. (*See* ECF #14-12.) At that hearing, the prosecutor urged the court to deny Robinson's motion to withdraw his plea. He emphasized that the "title of the charge" to which Robinson pleaded specifically referred to an "intent to murder," and the prosecutor insisted that it was thus "patently ridiculous" for Robinson to claim that he did not

8

understand that the prosecution would have had to prove that intent in order to convict him. (*Id.* at 2, Pg. ID 218.) The trial court followed the recommendation of the prosecutor and denied Robinson's motion to withdraw his plea. It held that it had conducted a thorough plea colloquy and that Robinson did not receive ineffective assistance of counsel with respect to his plea. (*See id.* at 3, Pg. ID 219.) The court also denied Robinson's motion to vacate his sentence because the court concluded that his sentencing guidelines were correctly scored. (*See id.* at 3-4, Pg. ID 219-220.)

Robinson then filed a delayed application for leave to appeal in the Michigan Court of Appeals. (*See* ECF #14-15.) He raised two claims. First, Robinson asserted that the trial court abused its discretion when it denied his motion to withdraw his plea because the plea "was rendered unknowing[ly] due to ineffective assistance of counsel." (*Id.* at 7, Pg. ID 229.) Second, Robinson argued that the trial court erred when calculating his sentencing guidelines. (*See id.*)

The Michigan Court of Appeals denied Robinson's application "for lack of merit in the grounds presented." *People v. Robinson*, No. 321242 (Mich. Ct. App. April 23, 2014). Robinson subsequently filed an application for leave to appeal in the Michigan Supreme Court, raising the same claims. (*See* ECF #14-16.) The Michigan Supreme Court denied the application because it was not persuaded that the questions presented should be reviewed by the court, and it denied Robinson's

9

requests for a remand and an evidentiary hearing. *People v. Robinson*, 856 N.W.2d 20 (Mich. 2014) (table).

## II

28 U.S.C. § 2254(d)(1) limits a federal court's review of constitutional claims raised by a state prisoner in a habeas action if the claims were adjudicated on the merits by the state courts. Here, the state trial court adjudicated Robinson's claims on the merits when it denied his motions to withdraw his plea vacate his sentence. (*See* ECF #14-12.) And the Michigan Court of Appeals did the same when it denied Robinson's application for leave to appeal "for lack of merit in the grounds presented." *See*, *e.g.*, *Hynes v. Birkett*, 526 Fed. App'x 515, 519 (6th Cir. 2013) ("[T]he order of the Michigan Court of Appeals denying [Petitioner's] delayed application for leave to appeal 'for lack of merit in the grounds presented' was an adjudication 'on the merits' under AEDPA."). Thus, Section 2254(d)(1) applies and relief is barred unless the state court adjudication was "contrary to" or resulted in an "unreasonable application of" clearly established federal law. 28 U.S.C. § 2254(d)(1).

"A state court's decision is 'contrary to' . . . clearly established law if it 'applies a rule that contradicts the governing law set forth in [Supreme Court cases]' or if it 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from

10

[this] precedent.'" *Mitchell v. Esparza*, 540 U.S. 12, 15-16 (2003) (per curiam) (quoting *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000)).

"[T]he 'unreasonable application' prong of [28 U.S.C. § 2254(d)(1)] permits a federal habeas court to 'grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court but unreasonably applies that principle to the facts' of petitioner's case." *Wiggins v. Smith*, 539 U.S. 510, 520 (2003) (quoting *Williams*, 529 U.S. at 413). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).

"Section 2254(d) reflects the view that habeas corpus is a guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal. . . . As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington*, 562 U.S. at 103.

## III

### A

Robinson's first claim in the Petition asserts that his no contest plea was involuntarily entered due to the ineffective assistance of his trial attorney. As described above, Robinson insists that his attorney failed to visit him in jail, failed to obtain a psychiatric evaluation, failed to investigate possible defenses, and coerced him into accepting the plea bargain by warning him that he would face a life sentence if he was found guilty by a jury. The trial court rejected this claim when it denied Robinson's motion to withdraw his plea, and then the Michigan Court of Appeals denied Robinson's subsequent appeal of that decision for "lack of merit." Respondent asserts that habeas relief is barred under Section 2254(d) because the state-courts merits adjudication of Robinson's ineffective assistance claim did not run afoul of clearly established federal law. The Court agrees.

To establish that he was denied the effective assistance of counsel, Robinson was required to show to the state courts that his trial counsel's performance fell below an objective standard of reasonableness and, but for counsel's errors, he would have proceeded to trial. See *Hill v. Lockhart*, 474 U.S. 52, 59 (1985); *see also Strickland v. Washington*, 466 U.S. 668, 688. Furthermore, because Section 2254(d) deference applies to the state courts' merits adjudication of his ineffective assistance claim, Robinson must also show that the state courts unreasonably

concluded that his trial counsel's performance was reasonable and that he was not prejudiced. See *Harrington*, 562 U.S. at 104 ("The standards created by *Strickland* and § 2254(d) are both 'highly deferential,' and when the two apply in tandem, review is 'doubly' so." (internal citations omitted)); *see also Rayner v. Mills*, 685 F.3d 631, 637 (6th Cir. 2012) (interpreting *Harrington* to hold that "when there is no explanation as to either *Strickland* prong, a habeas court must afford both prongs AEDPA deference after determining what arguments or theories could have supported the state court's decision") (internal quotation marks and alterations omitted).

Robinson has failed to demonstrate that the state courts unreasonably adjudicated his ineffective assistance claim. In fact, the record belies many of the bases upon which Robinson's ineffective assistance claim rests and supports a conclusion that the state courts reasonably denied relief on this claim. For example, Robinson complains that his attorney failed to meet with him prior to his plea. But Robinson's counsel represented to the trial court at the plea hearing that she had "met with Mr. Robinson" and that he wished to enter into the plea agreement. (ECF #14-3 at 2, Pg. ID 181.) At no time did Robinson suggest to the trial court that counsel's representation was inaccurate. In addition, at Robinson's sentencing, his counsel represented that she "visited with Mr. Robinson in the Oakland County Jail a number of times" where she repeatedly explained the

13

charges against him, and, again, Robinson did not say that his attorney was wrong. (ECF # 14-4 at 3, Pg. ID 188.) Moreover, the record shows that counsel had knowledge concerning Robinson's history, his poor upbringing, and his lack of education. (*See id.* at 2-3, Pg. ID 187-88.)

Robinson also claims that his trial counsel failed to obtain a psychiatric evaluation. But he has not explained what psychiatric condition he believes he suffers from or how a psychiatric evaluation would have helped his defense or been beneficial to him in any way.

Robinson also faults his trial counsel for failing to explore possible defenses. But Robinson has not shown that counsel missed any meritorious defenses. Robinson appears to suggest that he may have had a viable defense of self-defense on the ground that the victim was chasing him with a knife, (*see* ECF #14-5 at ¶7, Pg. ID 191), but there is no reason to believe that such a defense would have had a reasonable chance of prevailing. Indeed, Robinson fired multiple shots into a house through a *closed* door. (*See* ECF #14-2 at 14-15, Pg. ID 166-67.) Moreover, at his sentencing hearing, Robinson admitted his wrongdoing and did not suggest that any portion of his conduct was justified based on any need to defend himself. (*See* ECF #14-12.)

Additionally, Robinson's assertions in the affidavit he submitted in support of his ineffective assistance claim were contradicted by other statements Robinson made, under oath, to the trial court. For instance, contrary to the allegation in his affidavit, at the plea hearing Robinson told the trial court that he could read. (*See* ECF #14-3 at 3, Pg. ID 182.) Robinson also averred in the affidavit that he felt coerced into pleading guilty. But he specifically told the trial court that it was his own choice to enter into the plea agreement and that he did not feel threatened. (*See id.* at 4, Pg. ID 183.) The state courts were permitted to accept Robinson's sworn representations over the contradictory claims he made in his affidavit. *See Ramos v. Rogers*, 170 F.3d 560, 565-66 (6th Cir. 1999).

Given this record, it was not unreasonable for the state courts to reject Robinson's ineffective assistance claim.

The state courts could have also reasonably concluded that the plea colloquy was proper and sufficient to ensure that Robinson's plea was voluntary. Indeed, during the plea hearing, Robinson told the trial court that he understood the charges against him (including, specifically, the assault to commit murder charge), understood the plea agreement, understood the rights he would be waiving, and he denied that he had been threatened or coerced into entering his no contest plea.

Finally, Robinson asserts that his trial counsel was ineffective because she "never informed" him "of the elements required to convict a person of the charg[ed] offense (assault with intent to murder)." (Petition, ECF #9 at 6, Pg. ID 46.) Specifically, Robinson says that his trial counsel never told him that "intent to murder was an element of the offense" of assault with intent to murder. (ECF #14-15 at 11, Pg. ID 233; *see also* ECF #14-16 at 21, Pg. ID 302.) And Robinson insists that he would not have pleaded if he had been informed of that element. The state courts did not unreasonably reject this claim of ineffectiveness.

Indeed, the state courts could have reasonably concluded that even if Robinson's counsel had failed to inform Robinson of the elements of the charged offense, Robinson did not suffer any prejudice from that failure because Robinson had to know that an intent to murder was part of the charge against him. Simply put, the actions of the trial court and trial prosecutor plainly put Robinson on notice that the charge against him included an intent to murder. As described fully above, the trial judge specifically asked Robinson at his plea colloquy if he was pleading to the charge of "assault *with intent to commit murder*," and Robinson said "[y]es." (ECF #14-3 at 3, Pg. ID 182; emphasis added.) And the state court prosecutor further stated at the hearing that the preliminary examination transcript could establish that Robinson committed the crime of "assault *with intent to murder*." (*Id.* at 4-5, Pg. ID 183-84; emphasis added.) It would not be unreasonable for the

16

state courts to conclude that Robinson was aware that intent to murder was an element of the assault with intent to commit murder charge, that he factored that knowledge into his decision to plead guilty, and that he therefore did not suffer any prejudice even if his trial counsel did not specifically mention that element to him.

For all of these reasons, Robinson is not entitled to habeas relief on his ineffective assistance of counsel claim.

## B

Robinson's second claim in the Petition asserts that he was incorrectly assessed points under the sentencing guidelines for being on felony probation when in fact he was on juvenile probation for a misdemeanor. His related third claim asserts that his trial attorney was ineffective for failing to challenge this alleged error at sentencing. The trial court rejected these claims when it denied Robinson's motion to vacate his sentence. It determined that the scoring of Robinson's guidelines was *correct* under state law. The Michigan Court of Appeals subsequently denied Robinson's appeal "for lack of merit."

A state court's determination that state-law sentencing guidelines were properly scored is typically not cognizable in federal habeas corpus proceedings. *See Hutto v. Davis*, 454 U.S. 370, 373-74 (1982) (federal courts normally do not review a sentence for a term of years that falls within the limits prescribed by the state legislature); *Austin v. Jackson*, 213 F.3d 298, 301-02 (6th Cir. 2000) (alleged

17

violation of state law with respect to sentencing is not subject to federal habeas relief). Indeed, a state court's application of its sentencing laws and guidelines is generally "a matter of state concern only," *Howard v. White*, 76 Fed. App'x 52, 53 (6th Cir. 2003), and "federal habeas corpus relief does not lie for errors of state law." *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990). "In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." *Estelle v. McGuire*, 502 U.S. 62, 68 (1991). Moreover, a criminal defendant has "no federal constitutional right to be sentenced within Michigan's guideline minimum sentence recommendations." *Doyle v. Scutt*, 347 F. Supp. 2d 474, 485 (E.D. Mich. 2004); accord *Austin*, 213 F.3d at 300; *Lovely v. Jackson*, 337 F. Supp. 2d 969, 977 (E.D. Mich. 2004). Accordingly, Robinson is not entitled to habeas relief on his claim that he was improperly sentenced.

Finally, Robinson is not entitled to habeas relief on the ground that his trial counsel was ineffective for failing to object to the scoring of the sentencing guidelines. The trial court ruled that the guidelines were *correct* under state law. Thus, any objection trial counsel could have raised would have been futile, and the failure to raise a futile objection does not constitute the ineffective assistance of counsel. *See, e.g.*, *Harris v. United States*, 204 F.3d 681, 683 (6th Cir. 2000) ("Because an objection to inclusion of [defendant's] misdemeanor convictions in

18

the calculation of his criminal history score would have been futile, [defendant] cannot show that his attorney was constitutionally 'ineffective' in failing to make such an objection").

## IV

In order to appeal the Court's decision, Robinson must obtain a certificate of appealability. To obtain a certificate of appealability, a prisoner must make a substantial showing of the denial of a constitutional right. *See* 28 U.S.C. § 2253(c)(2). To demonstrate this denial, an applicant is required to show that reasonable jurists could debate whether the petition should have been resolved in a different manner, or that the issues presented were adequate to deserve encouragement to proceed further. *See Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000).

Here, jurists of reason would not debate the Court's conclusion that Robinson has not met the standard for a certificate of appealability because his claims are devoid of merit. The Court will therefore deny a certificate of appealability. The Court will also deny permission to appeal *in forma pauperis* because any appeal of this decision cannot be taken in good faith. *See* 28 U.S.C. ' 1915(a)(3).

## V

Accordingly, for the reasons stated above, **IT IS HEREBY ORDERED** that 1) the Petition (ECF #1) is **DENIED WITH PREJUDICE**, 2) a certificate of appealability is **DENIED**, and 3) permission to appeal *in forma pauperis* is **DENIED**.

**IT IS SO ORDERED.**

s/Matthew F. Leitman
MATTHEW F. LEITMAN
UNITED STATES DISTRICT JUDGE

Dated: December 2, 2016

I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on December 2, 2016, by electronic means and/or ordinary mail.

s/Holly A. Monda
Case Manager
(313) 234-5113